UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                     )<br>        Plaintiff,                                  )<br>                                                     )<br>v.                                                  )<br>                                                     )<br>AMERICAN COMMERCIAL LINES, LLC )<br>and D.R.D. TOWING COMPANY, LLC,  )<br>                                                     )<br>        Defendants.                            )<br>                                                     )<br>                                                     ) | CIVIL ACTION NO. 11-2076 (B)(2)<br><br>JUDGE: Lemelle<br><br>MAG. JUDGE: Wilkinson |

**AMERICAN COMMERCIAL LINES LLC'S ANSWER TO THE COMPLAINT WITH COUNTERCLAIMS AGAINST THE PLAINTIFF UNITED STATES OF AMERICA AND CROSS-CLAIMS AGAINST CO-DEFENDANT D.R.D. TOWING COMPANY, LLC**

NOW INTO COURT, through undersigned counsel, comes Defendant, American Commercial Lines LLC ("ACL"), who avers as follows for its Answer to the Complaint of the United States of America ("Plaintiff"):

**FIRST DEFENSE**

The Complaint fails to state a cause of action upon which relief can be granted and the Plaintiff has no right of action.

**SECOND DEFENSE**

Plaintiff has failed to mitigate any alleged items of damages.

**THIRD DEFENSE**

Plaintiff, through the National Pollution Funds Center ("NPFC"), has voluntarily made payments to third-parties which were not properly supported by the documentation required under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701, *et seq.,* or the applicable regulations adopted under OPA.

{N2408624.3}

## FOURTH DEFENSE

Plaintiff, through the NPFC, has voluntarily made payments to third-parties which were not legally recoverable under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701, *et seq.,* or the applicable regulations adopted under OPA.

## FIFTH DEFENSE

Plaintiff, through the NPFC, has voluntarily made payments to third-party Oil Spill Response Organizations ("OSROs") in excess of the amounts due under the contracts between ACL and the OSROs. These payments violated ACL's constitutional rights to freedom of contract.

## SIXTH DEFENSE

Plaintiff, through the NPFC, has adopted procedures for processing and paying third-party claims that denies designated Responsible Parties under OPA, such as ACL in this case, of property without due process of law.

## SEVENTH DEFENSE

If ACL is liable, which is denied, it is entitled to exoneration from liability and alternatively limitation of liability under the Shipowners' Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq.,* and OPA.

## EIGHTH DEFENSE

The negligence, fault and/or breach of duty of DRD, an independent contractor, cannot be imputed to ACL under OPA, the Clean Water Act, federal common law, or the General Maritime Law of the United States.

## NINTH DEFENSE

If ACL is liable, which is denied, ACL cannot be jointly and severally liable with DRD under OPA, the Clean Water Act, federal common law, or the General Maritime law of the United States.

## TENTH DEFENSE

To the extent the Clean Water Act provides for both strict and absolute liability for civil penalties, it violates due process of law.

## ELEVENTH DEFENSE

The faults and/or breaches of duty of DRD and John Bavaret and Terry Carver were the sole and proximate cause of any spill which supercede and are of independent origin from any alleged fault and/or breach of duty and/or breach of statutory duty allegedly attributed to ACL, which is denied.

## TWELFTH DEFENSE

AND NOW, further answering each and every allegation of the Complaint, should further answer be deemed necessary, ACL avers as follows:

1.

Admits that this action stems from the collision in the Port of New Orleans on July 23, 2008 between the M/V TINTOMARA and the barge DM-932 under tow of the tug MEL OLIVER, and except as so specifically admitted, denies the remaining allegations contained in paragraph 1 of the Complaint.

2.

Admits that this is a case of admiralty and maritime jurisdiction, and except as so specifically admitted, denies the remaining allegations contained in paragraph 2 of the Complaint.

3.

Admits that this Court has jurisdiction pursuant to 28 U.S.C. § 1333, and except as so specifically admitted, denies the remaining allegations contained in paragraph 3 of the Complaint.

4.

Admits that venue is proper in this Court, and except as so specifically admitted, denies the remaining allegations contained in paragraph 4 of the Complaint.

5.

Admits that ACL, a limited liability corporation existing under the laws of the State of Delaware, is subject to personal jurisdiction in this matter and was, at all material times, the owner of the tug MEL OLIVER and the barge DM-932, and except as so specifically admitted, denies the remaining allegations contained in paragraph 5 of the Complaint.

6.

Admits that at all material times, the tug MEL OLIVER was operated by defendant D.R.D Towing Company, LLC ("DRD"), and except as so specifically admitted, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 6 of the Complaint.

7.

Denies the allegations contained in paragraph 7 of the Complaint.

8.

Admits the allegations contained in paragraph 8 of the Complaint.

9.

Admits the allegations contained in paragraph 9 of the Complaint.

10.

Admits that DRD fraudulently induced ACL into entering into the bareboat and time charters as alleged in paragraph 10 of the Complaint, but denies that the charters were valid and enforceable on July 23, 2008.

11.

Admits that on July 22, 2008, the MEL OLIVER, temporarily moored at the ACL fleet in Harahan, Louisiana, was manned by only three crew men as Terry Carver had left the vessel sometime earlier; denies that the crew of the MEL OLIVER was supposed to include an apprentice mate/steersman rather than a properly licensed captain or mate; and except as so specifically admitted and denied, denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the Complaint.

12.

Admits that John Bavaret's license only authorized him to serve as an apprentice mate/steersman under the supervision of a properly license master and that the departure of Carver left Bavaret in charge of the tug up to the time of the accident, and except as so specifically admitted, denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint.

13.

Admits the allegations contained in paragraph 13 of the Complaint.

14.

Admits that on July 22, 2008, an ACL dispatcher requested the MEL OLIVER tow the barge DM-932 from Harahan to the J.W. Stone Oil Distributor, LLC facility in

Gretna, Louisiana and, except as so specifically admitted, denies the remaining allegations contained in paragraph 14 of the Complaint.

15.

Admits that the MEL OLIVER and the barge DM-932 arrived at the J.W. Stone facility at about 2:00 p.m. local time on July 22, 2008 and the MEL OLIVER, with the ladened barge, departed the J.W. Stone facility at about 12:35 a.m. local time on July 23, 2008, and except as so admitted, denies the remaining allegations contained in paragraph 15 of the Complaint.

16.

Admits that the MEL OLIVER and the barge DM-932 were running along the left descending bank of the Mississippi River until the flotilla began a series of erratic maneuvers culminating in the flotilla crossing just up river from the Harvey Locks, and except as so specifically admitted, denies the remaining allegations contained in paragraph 16 of the Complaint.

17.

Admits that the crew of the TINTOMARA and the New Orleans Vessel Traffic Service staff eventually noticed that the MEL OLIVER and the barge DM-932 were crossing the river; that the river pilot aboard the TINTOMARA and the New Orleans Vessel Traffic Service staff made several radio calls to the MEL OLIVER, none of which were responded to; and that the TINTOMARA did blow its whistle – although in no recognizable pattern, and except as so specifically admitted, denies the remaining allegations contained in paragraph 17 of the Complaint.

18.

Admits that at a little after 1:30 a.m. local time on July 23, 2008, the TINTOMARA struck the barge DM-932, causing the face wires connecting the barge to the MEL OLIVER to break, and that the barge DM-932 was carried downriver until it eventually partially sank just upriver of the Crescent City Connection Bridge, and except as so specifically admitted, denies the remaining allegations contained in paragraph 18 of the Complaint.

19.

Admits that the barge DM-932 had been carrying slightly less than 10,000 barrels of No. 6 fuel oil and that as a result of the collision, oil was discharged into and on the waters of the Lower Mississippi River, and except as so specifically admitted, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 19 of the Complaint.

20.

Admits that ACL participated in the pollution clean-up and recovery effort, and except as so specifically admitted, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 20 the Complaint.

21.

Admits that OSROs were called on to deploy oil spill protection and recovery equipment, and except as so specifically admitted, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 21 of the Complaint.

22.

Admits that after the oil spill the Coast Guard imposed temporary restrictions on the navigation of the Lower Mississippi River, and except as so specifically admitted, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 22 of the Complaint.

23.

Paragraph 23 of the Complaint alleges conclusions of law which do not require a response, but to the extent a response is required, the legal conclusions contained in paragraph 23 of the Complaint are denied as they relate to ACL.

24.

Paragraph 24 of the Complaint alleges conclusions of law which do not require a response, but to the extent a response is required, the legal conclusions contained in paragraph 24 of the Complaint are denied as they relate to ACL.

25.

Paragraph 25 of the Complaint alleges conclusions of law which do not require a response, but to the extent a response is required, the legal conclusions contained in paragraph 25 of the Complaint are denied as they relate to ACL.

26.

Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the Complaint.

27.

Paragraph 27 of the Complaint alleges conclusions of law which do not require a response, but to the extent a response is required, the legal conclusions contained in paragraph 27 of the Complaint are denied as they relate to ACL.

28.

Denies the allegations contained in paragraph 28 of the Complaint.

29.

Paragraph 29 of the Complaint alleges conclusions of law which do not require a response, but to the extent a response is required, the legal conclusions contained in paragraph 29 of the Complaint are denied as they relate to ACL.

30.

Denies that DRD was at all relevant times acting pursuant to a contractual relationship with ACL, alleges that paragraph 30 of the Complaint alleges conclusions of law which do not require a response, but to the extent a response is required, the legal conclusions contained in paragraph 30 of the Complaint as denied as they relate to ACL and except as so specifically denied and alleged, denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 30 of the Complaint.

31.

Repeats and re-alleges the contents of paragraphs 1 to 30 above as though fully set forth herein in response to paragraph 31 of the Complaint.

32.

Denies the allegations of paragraph 32 of the Complaint as they relate to ACL.

33.

Repeats and re-alleges the contents of paragraphs 1 to 32 above as though fully set forth herein in response to paragraph 33 of the Complaint.

34.

Denies the allegations contained in paragraph 34 of the Complaint.

35.

Paragraph 35 of the Complaint alleges conclusions of law which do not require a response, but to the extent a response is required, the legal conclusions contained in paragraph 35 of the Complaint are denied as they relate to ACL.

36.

Denies the allegations of paragraph 36 of the Complaint as they relate to ACL.

37.

Repeats and re-alleges the contents of paragraphs 1 to 36 above as though fully set forth herein in response to paragraph 37 of the Complaint.

38.

Paragraph 38 of the Complaint alleges conclusions of law which do not require a response, but to the extent a response is required, the legal conclusions contained in paragraph 38 of the Complaint are denied as they relate to ACL.

39.

Paragraph 39 of the Complaint alleges a prayer for relief which does not require a response, but to the extent a response is required, the prayer for relief contained in paragraph 35 of the Complaint is denied as it relates to ACL.

## **COUNTERCLAIM**

AND NOW, assuming the position of Counterclaimant, Defendant, ACL avers upon information and belief for its Counterclaim against Plaintiff as follows:

1.

The counterclaim is within the admiralty and maritime jurisdiction of this Court under 28 U.S.C. § 1333 and sets forth an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.

At all material times, ACL was the owner of the barge DM-932, an unmanned, non-self propelled, double hull, steel tank barge, bearing official number 546058, measuring approximately 195 feet in length and 35 feet in breadth.

3.

At all material times, the barge DM-932 was in all respects tight, staunch, strong, equipped and supplied, in all respects seaworthy and fit for the service in which it is engaged.

4.

On or about July 23, 2008, the barge DM-932 was located in the Mississippi River and was under the exclusive care, custody and control of, and was being towed by, the tug MEL OLIVER (Official Number 614387), a towing vessel operated and crewed by DRD.

5.

At all material times, DRD is and was an independent contractor.  ACL had no employees or representatives aboard the barge DM-932 or the tug MEL OLIVER, and the barge DM-932 was under the sole care, custody and control of DRD and the crew of the tug MEL OLIVER, who were solely responsible for the safe navigation of the barge DM-932.

6.

At approximately 0130 hours local time on July 23, 2008, a collision occurred on the Mississippi River at or near Mile 98 AHP between the M/V TINTOMARA, a Liberian flag oceangoing vessel owned by Whitefin Shipping Co. Ltd., and the barge DM-932 while the barge DM-932 was being towed by the tug MEL OLIVER.

7.

The foregoing collision was not due to any fault, neglect or want of due care on the part of ACL, the barge DM-932 nor anyone for whom ACL may be responsible.

8.

As a result of the foregoing collision, the barge DM-932 was struck and damaged by the M/V TINTOMARA, subsequently partially sank, and was rendered a total loss. The barge DM-932 was removed from the Mississippi River by an independent contractor engaged by ACL.

9.

At the time of the collision, the barge DM-932 was laden with a cargo of fuel oil. As a result of the above collision, some of the cargo aboard the barge DM-932 was spilled and/or discharged into the Mississippi River.

10.

The Coast Guard and other authorities were notified of the collision, the discharge of fuel oil from the barge DM-932 and resulting damages. As a result of the oil spill, the Coast Guard notified ACL, as the owner of the barge DM-932, that it may be liable as "a responsible party" pursuant to OPA for removal costs and damages. The Coast Guard further identified the barge DM-932 as the source of the discharge. ACL reserved all defenses to the designation as a responsible party, including but not limited to, the right to assert that the discharge of oil and resulting damages or removal costs were caused solely by the act or omission of a third party.

11.

ACL was required to clean up the oil spill and to create a claims procedure for third parties who claimed to have suffered losses as a result of the spill. ACL incurred

cleanup costs and expenses to date of $64,700,000 and paid damages to date to third parties pursuant to OPA in the amount of $698,000.

12.

ACL also still has contingent liabilities not yet fully determined of approximately $40 million and invokes the procedures of Rule 18(b) of the Federal Rules of Civil Procedure.

13.

As the collision and resulting oil spill resulted without any fault on the part of ACL, ACL is not liable under 33 U.S.C. § 2703(a) for the removal costs and damages resulting from the oil spill. Therefore, ACL is entitled to full reimbursement by the NPFC, on behalf of the Plaintiff, of the removal costs it has paid in the amount of $64,700,000 and the damages to third-parties it has paid in the amount of $698,000, as well as any future claims ACL may pay.

14.

Alternatively, ACL is entitled to limit its liability under 33 U.S.C. § 2703 to $4,000,000 as the owner of the barge DM-932. Therefore, ACL is entitled to reimbursement by the NPFC, on behalf of the Plaintiff, for all sums paid for removal costs and damages in excess of $4,000,000.

## **CROSS-CLAIM**

AND NOW, assuming the position of Cross-Claimant, Defendant, ACL avers upon information and belief for its Cross-Claim against co-defendant DRD as follows:

1.

The cross-claim is within the admiralty and maritime jurisdiction of this Court under 28 U.S.C. § 1333 and sets forth an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.

At all material times, ACL was the owner of the barge DM-932, an unmanned, non-self propelled, double hull, steel tank barge, bearing official number 546058, measuring approximately 195 feet in length and 35 feet in breadth.

3.

At all material times, the barge DM-932 was in all respects tight, staunch, strong, equipped and supplied, in all respects seaworthy and fit for the service in which it is engaged.

4.

On or about July 23, 2008, the barge DM-932 was located in the Mississippi River and was under the exclusive care, custody and control of, and was being towed by, the tug MEL OLIVER (Official Number 614387), a towing vessel operated and crewed by DRD.

5.

At all material times, DRD is and was an independent company. ACL had no employees or representatives aboard the barge DM-932 or the tug MEL OLIVER, and the barge DM-932 was under the sole care, custody and control of DRD and the crew of the tug MEL OLIVER, who were solely responsible for the safe navigation of the barge DM-932.

6.

At approximately 0130 hours local time on July 23, 2008, a collision occurred on the Mississippi River at or near Mile 98 AHP between the M/V TINTOMARA, a Liberian flag oceangoing vessel owned by Whitefin Shipping Co. Ltd., and the barge DM-932 while the barge DM-932 was being towed by the tug MEL OLIVER.

7.

The foregoing collision was not due to any fault, neglect or want of due care on the part of ACL, the barge DM-932 nor anyone for whom ACL may be responsible. Rather, the collision was due, *inter alia,* to the fault, neglect or want of due care of DRD or those for whom DRD is responsible.

8.

As a result of the foregoing collision, the barge DM-932 was struck and damaged by the M/V TINTOMARA, subsequently partially sank, and was rendered a total loss. The barge DM-932 was removed from the Mississippi River by an independent contractor engaged by ACL.

9.

At the time of the collision, the barge DM-932 was laden with a cargo of fuel oil. As a result of the above collision, some of the cargo aboard the barge DM-932 was spilled and/or discharged into the Mississippi River.

10.

The Coast Guard and other authorities were notified of the collision, the discharge of fuel oil from the barge DM-932 and resulting damages. As a result of the oil spill, the Coast Guard notified ACL, as the owner of the barge DM-932, that it may be liable as "a responsible party" pursuant to OPA for removal costs and damages. The Coast Guard

further identified the barge DM-932 as the source of the discharge. ACL reserved all defenses to the designation as a responsible party, including but not limited to, the right to assert that the discharge of oil and resulting damages or removal costs were caused solely by the act or omission of a third party.

11.

ACL was required to clean up the oil spill and to create a claims procedure for third parties who claimed to have suffered losses as a result of the spill. ACL incurred cleanup costs and expenses to date of $64,700,000 and paid damages to date to third parties pursuant to OPA in the amount of $698,000.

12.

ACL also still has contingent liabilities not yet fully determined of approximately $40 million and invokes the procedures of Rule 18(b) of the Federal Rules of Civil Procedure.

13.

ACL is entitled to have DRD declared to be the responsible party under 33 U.S.C. § 2702(d) and to a judgment requiring DRD to fully indemnify ACL for the sums incurred in cleanup costs and expenses and damages paid to third parties.

14.

Further, if the Plaintiff is found to be entitled to any recovery from ACL in this action, which is denied, then ACL is entitled to indemnity, and alternatively contribution, for all such sums from DRD, and ACL is entitled to entry of judgment over and against DRD for any sums ACL may be cast in judgment.

WHEREFORE, Defendant, American Commercial Lines LLC, prays that the foregoing Answer, Counterclaim and Cross-Claim be deemed good and sufficient, and

after due proceedings have been had that there be judgment entered in favor of Defendant, American Commercial Lines LLC, and against Plaintiff, United States of America, dismissing Plaintiff's Complaint, with prejudice, and granting judgment on American Commercial Lines LLC's counterclaims and/or causes of action in the amount in excess of $60,000,000 as will be determined at trial, plus interest and attorney fees, with Plaintiff United States of America to bear all costs of Court; or, alternatively, granting judgment on American Commercial Lines LLC's cross-claim against co-defendant D.R.D. Towing Company, LLC for cleanup costs and expenses and paid damages in an amount in excess of $60,000,000 as will be determined at trial together with any sums awarded to the Plaintiff United States of America plus interest and attorneys' fees, with co-defendant D.R.D. Towing Company, LLC to bear all costs of Court, and for such other and further relief which the justice of the cause may require.

New Orleans, Louisiana this 20th day of January, 2012.

Respectfully submitted,

/s/ Glenn G. Goodier
GLENN G. GOODIER (#06130), T.A.
RICHARD D. BERTRAM (#17881)
LANCE M. SANNINO (#29409)
Jones, Walker, Waechter, Poitevent,
Carrère & Denègre, L.L.P.
201 St. Charles Avenue – 48th Floor
New Orleans, Louisiana 70170-510
Telephone: (504) 582-8174
Fax: (504) 582-8010
Email: ggoodier@joneswalker.com
Counsel for Defendant,
 American Commercial Lines LLC

and Of Counsel

JOHN A.V. NICOLETTI
TERRY L. STOLTZ
NICOLETTI HORNIG & SWEENEY
Wall Street Plaza; 88 Pine Street
New York, NY 1005-1801
Telephone:     (212) 220-3830
Fax:               (212) 220-3780
jnicoletti@nicolettihornig.com
tstoltz@nicolettihornig.com
Attorneys for American Commercial Lines LLC

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 20th day of January, 2012 served a copy of the foregoing pleading on counsel for all parties to this proceeding by electronic filing, facsimile, hand delivery and/or by mailing the same by United States mail, properly addressed and first class postage prepaid.

/s/ Glenn G. Goodier