UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 11-2076 (B)(2) |
| v. | ) | |
| | ) | JUDGE: Lemelle |
| AMERICAN COMMERCIAL LINES, LLC | ) | |
| and D.R.D. TOWING COMPANY, LLC, | ) | MAG. JUDGE: Wilkinson |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## AMERICAN COMMERCIAL LINES LLC'S THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANTS ENVIRONMENTAL SAFETY AND HEALTH CONSULTING SERVICES, INC. AND UNITED STATES ENVIRONMENTAL SERVICES, LLC

NOW INTO COURT, through undersigned counsel, comes Defendant/Third-Party Plaintiff American Commercial Lines, LLC ("ACL"), who avers upon information and belief as follows for its Third-Party Complaint against Third-Party Defendants Environmental Safety and Health Consulting Services, Inc. ("ES&H"), and United States Environmental Services, LLC ("USES") and tender ES&H and USES as direct defendants to the United States of America in accordance with Rule 14(c) of the Federal Rules of Civil Procedure:

1.

Defendant/Third-Party Plaintiff ACL is a Delaware limited liability company with a principal place of business at 1701 East Market Street, Jeffersonville, Indiana.

2.

Third-Party Defendant ES&H is a Louisiana corporation with a principal place of business in Houma, Louisiana.

{N2408539.3}

3.

Third-Party Defendant USES is a Louisiana limited liability company with a principal place of business at 365 Canal Street, New Orleans, Louisiana.

4.

This matter is within the admiralty and maritime jurisdiction of this Court under 28 U.S.C. § 1333 and is an admiralty and maritime claim under Federal Rule of Civil Procedure Rule 9(h).  ACL hereby invokes the provisions of Federal Rule of Civil Procedure 14(c)(2) and tenders ES&H and USES as direct defendants to the United States of America and demands judgment on behalf of Plaintiff United States of America against Third-Party Defendants ES&H and USES.

5.

This is a matter arising out of the laws of the United States and is within the subject matter jurisdiction of this Court under 28 U.S.C. § 1331.

6.

This matter is within the subject matter jurisdiction of this Court under 28 U.S.C. § 1332 as there is diversity of citizenship between Defendant/Third-Party Plaintiff ACL and Third-Party Defendants ES&H and USES, and the amount in controversy exceeds the sum of $75,000.

7.

The Court has subject matter jurisdiction over this Third-Party Complaint under 28 U.S.C. § 1367 as the claims asserted herein are so related to the claims asserted in the Complaint that they form part of the same case or controversy.

8.

At all material times, ACL was the owner of the barge DM-932, an unmanned, non-self propelled, double hull, steel tank barge, bearing official number 546058, measuring approximately 195 feet in length and 35 feet in breadth.

9.

At all material times, the barge DM-932 was in all respects tight, staunch, strong, equipped and supplied, in all respects seaworthy and fit for the service in which it was engaged.

10.

At approximately 0130 hours local time on July 23, 2008, a collision occurred on the Mississippi River at or near Mile 98 AHP between the M/V TINTOMARA and the barge DM-932 while the barge DM-932 was being towed by the tug MEL OLIVER.

11.

The foregoing collision was not due to any fault, neglect or want of due care on the part of ACL, the barge DM-932 nor anyone for whom ACL may be responsible.

12.

As a result of the foregoing collision, the barge DM-932 was struck and damaged by the M/V TINTOMARA, subsequently partially sank, and was rendered a total loss.

13.

At the time of the collision, the barge DM-932 was laden with a cargo of fuel oil. As a result of the above collision, some of the cargo aboard the barge DM-932 was spilled and/or discharged into the Mississippi River.

14.

The Coast Guard and other authorities were notified of the collision, the discharge of fuel oil from the barge DM-932 and resulting damages.  As a result of the oil spill, the Coast Guard notified ACL, as the owner of the barge DM-932, that it may be liable as "a responsible party" pursuant to OPA for removal costs and damages.  The Coast Guard further identified the barge DM-932 as the source of the discharge.  ACL reserved all defenses to the designation as a responsible party, including but not limited to, the right to assert that the discharge of oil and resulting damages or removal costs were caused solely by the act or omission of a third party.

15.

As a designated "responsible party" under OPA, ACL was required to clean up the oil spill.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST THIRD-PARTY DEFENDANT ES&H

16.

ACL repeats and re-alleges paragraphs 1 through 15 above as if fully set forth herein.

17.

In compliance with the requirement that it clean up the oil spill, ACL entered into a contract with ES&H for ES&H to provide clean up services.

18.

ES&H issued a series of invoices to ACL in the total amount of $14,591,240.54.  Pursuant to the terms of the contract, ACL had the invoices audited to insure full

compliance with the contract. As the audit was progressing, ACL made payments on account to ES&H in the amount of $10,654,165.06.

19.

ES&H never provided the additional documentation requested by the auditors, including, *inter alia,* federally required I-9 forms with respect to its personnel and/or labor force and Hazardous Waste Operations and Emergency Response("HAZWOPER") certificates or other evidence that its personnel and/or labor force received the proper training and/or certification for the clean up and/or remediation of oil contamination.

20.

Rather than providing the requested documentation and completing the audit as required by the contract, ES&H filed a series of claims with the NPFC totaling $3,327,117.09.

21.

ACL has been advised that the NPFC, without requesting production of the documents ES&H was required to produce to ACL in order to complete a proper audit and before receiving payment from ACL, has awarded ES&H $3,071,222.83.

22.

The United States seeks to recover from ACL sums paid to ES&H, despite ES&H's refusal to properly document its invoices pursuant to the governing law and the terms of the contract (Exhibit 1 hereto, Complaint of the United States of America). To the extent ACL is found liable to the United States for these non-contractual payments, ACL is entitled to indemnity from ES&H for those payments, together with any "processing fee" that the United States collects in connection with those payments. Further, if the United States is entitled to recover, which ACL denies, then the United

States should recover directly from ES&H pursuant to Rule 14(c) of the Federal Rules of Civil Procedure, without any contribution from ACL.

## AS AND FOR A SECOND CAUSE OF ACTION
## AGAINST THIRD-PARTY DEFENDANT USES

23.

ACL repeats and re-alleges paragraphs 1 through 15 above as if fully set forth herein.

24.

In compliance with the requirement that it clean up the oil spill, ACL entered into a contract with USES for USES to provide clean up services.

25.

USES issued a series of invoices to ACL in the total amount of $18,504,904.39. Pursuant to the terms of the contract, ACL had the invoices audited to insure full compliance with the contract. As the audit was progressing, ACL made payments on account to USES in the amount of $14,062,079.29.

26.

USES never provided the additional documentation requested by the auditors, including, *inter alia,* federally required I-9 forms with respect to its personnel and/or labor force and HAZWOPER certificates or other evidence that its personnel and/or labor force received the proper training and/or certification for the clean up and/or remediation of oil contamination.

27.

Lawson Environmental Services ("Lawson"), a sub-contractor of USES, provided ACL's auditors with the federally required I-9 forms and the HAZWOPER certificates or

other evidence that its personnel and/or labor force received the proper training and/or certification for the clean up and/or remediation of oil contamination. Because USES failed to pay its sub-contractor, ACL then made payments of $1,196,397.85 directly to Lawson in connection with sums invoiced by USES.

28.

Rather than providing the requested documentation and completing the audit as required by the contract, USES filed a series of claims with the NPFC totaling $2,214,917.67.

29.

ACL had been advised that the NPFC, without requesting production of the documents USES was required to produce to ACL in order to complete a proper audit and before receiving payment from ACL, has to date awarded USES $1,519,564.74. ACL does not know how the NPFC has handled two of USES's claims totaling $553,661.92.

30.

The United States seeks to recover from ACL sums paid to USES, despite USES's refusal to properly document its invoices pursuant to the governing law and the terms of the contract (Exhibit 1 hereto, Complaint of the United States of America). To the extent ACL is found liable to the United States for these non-contractual payments, ACL is entitled to indemnity from USES for those payments, together with any "processing fee" that the United States collects in connection with those payments. Further, if the United States is entitled to recover, which ACL denies, then the United States should recover directly from USES pursuant to Rule 14(c) of the Federal Rules of Civil Procedure, without any contribution from ACL.

WHEREFORE, Defendant/Third-Party Plaintiff American Commercial Lines LLC prays that the foregoing Third-Party Complaint be deemed good and sufficient and after due proceedings have been had that there be judgment entered in favor of Defendant/Third-Party Plaintiff American Commercial Lines LLC dismissing the Complaint of plaintiff United States of America, with prejudice; that judgment be entered against the third party defendants for all sums, if any, which may be recovered by the United States of America against American Commercial Lines LLC; that judgment be entered in favor of plaintiff United States of America pursuant to Federal Rule of Civil Procedure 14(c)(2) and against Third-Party Defendants Environmental Safety and Health Consulting Services, Inc., and United States Environmental Services, LLC in the amount as will be determined at trial, plus interest and attorney fees, with Third-Party Defendants to bear all costs of Court, and for such other and further relief which the justice of the cause may require.

New Orleans, Louisiana this 20th day of January, 2012.

Respectfully submitted,

*/s/ Glenn G. Goodier*
GLENN G. GOODIER (#06130), T.A.
RICHARD D. BERTRAM (#17881)
LANCE M. SANNINO (#29409)
Jones, Walker, Waechter, Poitevent,
Carrère & Denègre, L.L.P.
201 St. Charles Avenue – 48th Floor
New Orleans, Louisiana 70170-510
Telephone: (504) 582-8174
Fax: (504) 582-8010
Email: ggoodier@joneswalker.com
Counsel for Defendant/Third Party Plaintiff,
 American Commercial Lines LLC

and Of Counsel

{N2408539.3} 8

>JOHN A.V. NICOLETTI
>TERRY L. STOLTZ
>NICOLETTI HORNIG & SWEENEY
>Wall Street Plaza; 88 Pine Street
>New York, NY 1005-1801
>Telephone: (212) 220-3830
>Fax: (212) 220-3780
>jnicoletti@nicolettihornig.com
>tstoltz@nicolettihornig.com
>Attorneys for American Commercial Lines LLC

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 20th day of January, 2012 served a copy of the foregoing pleading on counsel for all parties to this proceeding by electronic filing, facsimile, hand delivery and/or by mailing the same by United States mail, properly addressed and first class postage prepaid.

>*/s/ Glenn G. Goodier*