## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2076** |
| **AMERICAN COMMERCIAL LINES, LCC, ET AL** | **SECTION "B"(2)** |

### ORDER AND REASONS

Before the Court is American Commercial Lines, LLC's ("ACL" or "Defendant") motion for partial summary judgment. Rec. Doc. 146. Plaintiff, the United States of America ("Plaintiff" or "United States"), timely filed an opposition memorandum. Rec. Doc. 151. The Court then granted leave for ACL to file a reply memorandum. Rec. Doc. 154. For the reasons discussed below,

**IT IS ORDERED** that the Motion is **DENIED.**

### I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of an oil spill in the Mississippi River. On July 23, 2008, a collision between the M/V TINTOMARA, an ocean-going tanker, and DM 932, a barge carrying thousands of barrels of oil, resulted in an oil spill in the Mississippi River near New Orleans, Louisiana. Rec. Doc. 98 at 4. ACL owned the barge and the M/V MEL OLIVER, the tug towing DM 932 at the time of the accident. *Id*. Following the spill, the Coast Guard deemed ACL a responsible party under the Oil Pollution Act of 1990 ("OPA") and therefore liable for removal costs and damages resulting from the incident.

1

*Id.* at 6. Accordingly, ACL contracted with a number of oil spill responders to clean up the spill, including Environmental Safety and Health Consulting Services, Inc. ("ES&H"), United States Environmental Services, LLC ("USES"), and Oil Mop, LLC. ("OMI"). Rec. Doc. 146-1 at 2.  The U.S. Coast Guard also closed twenty-nine miles of the Lower Mississippi River following the spill. Rec. Doc. 1 at 6. It re-opened the river for navigation on July 30, 2008. *Id.*

Following the clean-up, ACL appointed Worley Catastrophe Response ("Worley") as its designated agent to receive claims, and Maritime Alliance Group Inc. ("MAGI") was charged with auditing the invoices. Rec. Doc. 146-1 at 2. The spill responders then invoiced ACL for their services, but ACL disputed some of the claims and failed to pay or settle all outstanding claims within the ninety-day time period mandated by the OPA. Rec. Doc. 98 at 6. According to ACL, it made the following payments to the relevant spill responders:

- ACL paid ES&H approximately $10.6 million and withheld payment of around $3.9 million of the amount invoiced.

- ACL paid USES approximately $13.4 million and withheld payment of around $6.3 million of the amount invoiced.

- ACL paid OMI approximately $19.1 million and withheld payment of around $6.5 million of the amount invoiced.[1]

Because not all outstanding claims were paid within the 90-day period, the spill responders submitted claims for uncompensated removal costs to the Oil Spill Liability Trust Fund ("the Fund") pursuant to the OPA. *Id.* at 6. ACL maintains that the Fund improperly paid claims submitted by the aforementioned responders.

The United States then filed suit against ACL under the OPA to recover the Fund's payments to the responders. *See* Rec. Doc. 1. In turn, ACL filed a Third Party Complaint against ES&H and USES, alleging that all sums sought by the United States are actually owed by the spill responders due to their failure to properly present their claims to ACL. *See* Rec. Doc. 11. The United States, ES&H, and USES all filed separate motions to dismiss the Third Party Complaint. Rec. Docs. 31, 32, and 35. Thereafter, this Court granted the motions and dismissed the Third Party Complaint, finding that the OPA preempts the general maritime claims which ACL sought to assert. Rec. Doc. 86. ACL appealed, and the United States Court of Appeals for the Fifth Circuit issued a Judgment as mandate on August 7, 2014. Rec. Doc. 98. The Fifth Circuit affirmed this Court's dismissal of the Third Party Complaint and held that "ACL does not have a cause of action against the spill responders

---

[1] *See* Rec. Doc. 146-1 at 4-5.

who exercised their statutory right to file claims with the Fund after ACL failed to timely pay their claims." *Id*. at 8.  The Supreme Court of the United States then denied ACL's petition for a writ of certiorari. Rec. Doc. 128.

In the meantime, this Court granted the United States' motion for partial summary judgment, declaring: (1) ACL a "responsible party" for the purposes of liability for removal costs and damages under the OPA; (2) that ACL is not entitled to invoke the complete sole-fault third-party defense under the OPA; and (3) that ACL is not entitled to invoke the limitation of liability defense under the OPA. Rec. Doc. 125. Now, ACL has filed its own motion for partial summary judgment.

## II.  **THE PARTIES' CONTENTIONS**

ACL's motion seeks dismissal of those claims never presented to ACL, those claims not properly presented to ACL, those claims where damages were not caused by the oil spill, as well as OMI's claims that were allegedly filed in violation of a forum selection clause. Rec. Doc. 146 at 1. First, ACL argues that the Coast Guard Regulations govern the presentment of claims to a responsible party, requiring: "a general description of the nature and extent of the impact of the oil spill and the associated damages, a list of the damages with a 'sum certain' attributed to each type of damage listed, and *evidence to support this claim*.". Rec. Doc. 146-1 at 9. ACL further avers that the holding of *Nguyen v.*

4

*American Commercial Lines*, *L.L.C.*, 805 F.3d 134 (5th Cir. 2015), is not applicable in this instance because it only applies when "the third party claimant chooses to file a lawsuit against the responsible party in the District Court, where discovery is available." *Id*.

Based upon this proposed standard, ACL contends that the Fund paid claims filed by OMI and ES&H that were not properly presented, or not presented at all, to ACL. Rec. Doc. 146-1 at 10. ACL further argues that the United States should not be able to collect for payments made on claims that were substantially different from those claims submitted to ACL or claims based upon documentation never submitted to ACL. *Id*. at 11-13. Finally, ACL challenges all payments made where the claimants did not establish that the loss was caused by the oil spill as well as all payments made to OMI based upon a forum selection clause. *Id*. at 14-16.

The United States first argues that ACL misconstrues the OPA's presentment requirement. Rec. Doc. 151 at 3. The Government avers that *Nguyen* is controlling in this circuit, and that it clearly rejects ACL's contention that the Coast Guard Regulations govern presentment requirements to responsible parties. *Id*. at 3-4. Giving little heed to ACL's contention that *Nguyen* only applies when a third party files a lawsuit rather than submits a claim to the Fund, the United States argues that such a strained reading of *Nguyen* contradicts the applicable statute's basic language. *Id*. at

5. The United States further maintains that none of ACL's specific arguments about presentment are meritorious either due to lack of factual or legal support. *Id*. at 7-11. Finally, the Government contends that all lost income damages paid from the Fund were due to the oil spill and that the venue provision in ACL's contract with OMI did not preclude OMI from bringing a claim to the fund. *Id*. at 11-22. Accordingly, the United States urges this Court to deny the motion.

### III. <u>LAW AND ANALYSIS</u>

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If and when the movant carries this burden, the non-movant

6

must then go beyond the pleadings and present other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993). This Court will first address the appropriate presentment standard under the OPA and ACL's arguments for dismissal of certain claims due to the claimants' alleged failure to properly present them.

### a. The OPA's Presentment Requirement

"Congress passed the OPA, 33 U.S.C. § 2701 *et seq.*, after the Exxon Valdez oil spill 'to streamline federal law so as to provide quick and efficient cleanup of oil spills, compensate victims of such spills, and internalize the costs of spills within the petroleum industry.'" *Nguyen*, 805 F.3d at 138 (quoting *Rice v. Harken Expl. Co.*, 250 F.3d 264, 266 (5th Cir. 2001)). To achieve those ends, the OPA requires the Coast Guard to identify "responsible parties who must pay for oil spill cleanup in the first instance." *United States v. American Commercial Lines,*

*L.L.C.*, 759 F.3d 420, 422 (5th Cir. 2014) (citing 33 U.S.C. § 2702(a)) (internal quotation marks and alterations omitted). All claims for removal costs or damages arising from the oil spill must first be presented to the responsible party. 33 U.S.C. § 2713(a); *Nguyen*, 805 F.3d at 139. If the responsible party then denies liability or does not settle the claim within ninety (90) days of presentment, the claimant may commence an action in court against the responsible party or file the claim against the Fund— "a public trust fund established by the OPA to compensate those harmed by oil spills." *Id.* If the claimant chooses to file a claim against the Fund, "the government is subrogated to the claimant's rights under the OPA and may assert those rights in litigation to recoup any payments made on claims." *Id.* at 139 n. 4 (citing 33 U.S.C. § 2715). The United States' assertion of those rights forms the basis of the controversy here.

ACL maintains that a number of the United States' claims must be dismissed because the oil spill responders did not properly present their claims in the first instance. The Fifth Circuit addressed the contours of the presentment requirement in some depth in *Nguyen*, a case arising out of the exact same oil spill filed by a number of commercial fisherman and others affected by the spill. *Id.* at 136. In contrast to this case, the *Nguyen* plaintiffs proceeded directly to court after their claims were not timely settled instead of filing their claims with the Fund as did the

oil spill responders in this case. *Id*. at 136-37. In *Nguyen*, the Fifth Circuit patently rejected a number of the arguments re-urged by ACL here concerning presentment procedures.

Deeming it a misreading of the OPA, the *Nguyen* court rejected ACL's argument that presentment of a claim is only proper if it includes all information and supporting documentation requested by the responsible party. 805 F.3d at 140. The court specifically found ACL'S reading of 33 U.S.C. § 2713 erroneous because it "conflat[ed] the requirements for filing claims against the Fund with the requirements for presenting claims to a responsible party." *Id*. at 140-41. The court further noted that the requirements for filing a claim against the Fund found in the Coast Guard regulations, 33 C.F.R. § 136.105, do not apply to claims presented to the responsible party. *Id*. at 141. It is indisputably clear from the Fifth Circuit's opinion in *Nguyen* that the requirements for filing claims with the Fund are not identical to the requirements for filing a claim with the responsible party under the OPA. As the Fifth Circuit explained, the fact that a claimant only has a single claim does not mean that the requirements cannot differ for presentment to the responsible party versus presentment to the Fund:

> The OPA defines a claim as 'a request, made in writing, for a sum certain, for compensation for damages or removal costs resulting from an incident,' and this definition *applies to all claims under the OPA*. 33 U.S.C. § 2701(3).

9

> While § 2713(e) allows the President to promulgate regulations that expand what claimants must submit when filing their claims 'against the Fund,' it does not authorize the President to alter or expand the definition of a 'claim' under the statute generally. Thus, the requirements for filing a claim against the Fund in 33 C.F.R. § 136.105 do not apply to claims presented to the responsible party.

*Id.* (emphasis added).

ACL's argument concerning the inapplicability of *Nguyen* in this context is clearly erroneous. ACL maintains that *Nguyen* only applies to instances where the claimants choose to directly file suit instead of filing claims with the Fund. In support, ACL claims that the difference between the two situations is that when a claimant files its claim with the Fund, ACL will not have access to discovery as it would if the claimant chose to file suit instead. Rec. Doc. 126-1 at 9. First, the *Nguyen* court made no such distinction, discussing presentment requirements to responsible parties generally without any differences based upon the claimants' decisions post-presentment. *See Nguyen*, 805 F.3d at 141. ("[T]his definition applies to all claims under the OPA."). Second, ACL's argument is logically unsound. Even when claimants choose to file claims with the Fund, the responsible party will still have access to discovery when the government is subrogated to the rights of the claimants and files suit to recover the amounts paid by the Fund. Consequently, this Court finds *Nguyen* controlling and ACL's attempt to distinguish it unconvincing. We

therefore reject ACL's general arguments: (1) that the Coast Guard regulations concerning the requirements for presentment govern presentment to responsible parties; and (2) the related argument that the presentment requirements for claims made to the responsible party are the same as those for claims made to the Fund. Accordingly, ACL's specific arguments concerning "substantially different" invoices and payments made on the basis of documentation not presented to ACL are rejected as well, *see* Rec. Doc. 146-1 at 11-13, because the fact that supplemental documentation submitted to the Fund was not sent to ACL or Worley does not, in and of itself, render presentment improper.[2] The Court will now turn to ACL's remaining arguments challenging the presentment of specific claims.

### 1. OMI Invoice N0901-239

ACL complains that OMI never presented Worley, its claim administrator, with invoice N0901-239, which sought recovery for $1,383,389.73 worth of discounts reflected in the original invoices. Rec. Doc. 146-1 at 10. Because it was allegedly never presented to Worley, ACL maintains that the Fund improperly paid

---

[2] Furthermore, the supporting evidence submitted by ACL does not adequately demonstrate that any claims were so substantially different to render presentment inadequate. Forensic accountant John Kim claims that substantial differences exist citing to Exhibit A to his declaration as support. Rec. Doc. 146-3 at 66. However, Exhibit A only displays details of the invoices submitted to the Fund, not those submitted to Worley. *Id.* at 69. Accordingly, the Court cannot confirm that the invoices are substantially different as Kim contends. Moreover, ACL does not submit a standard for determining when a difference is so substantial so as to render presentment inadequate.

the claim and thus the Government's claim for reimbursement of those funds should be dismissed.[3] *Id.* The United States points out that it is undisputed that OMI presented the claim to ACL, even if Worley never received it. Rec. Doc. 151 at 7. Further, the Government responds that ACL provides no legal support for the argument that a claim must be submitted to a third-party claim administrator rather than the responsible party itself. *Id.* Finally, the United States argues that ACL has presented no evidence to support the assertion that Worley never received the claim, making summary judgment inappropriate. *Id.* In its reply memorandum, ACL concedes that it received the invoice but argues that OMI was required to send the invoice to Worley pursuant to the notice that was approved by the Fund and issued under 33 U.S.C. § 2714(b). Rec. Doc. 154 at 2.

The OPA specifically states that "all claims for removal costs . . . shall be presented to the responsible party." 33 U.S.C. § 2713(a). However, the OPA also requires the responsible party to issue an advertisement setting forth the procedures by which a claim may be presented. 33 U.S.C. § 2714(b). ACL issued such notice telling claimants to submit claims to its third party administrator

---

[3] ACL also includes several conclusory statements suggesting that a Fund employee improperly solicited the claim and that the claim did not actually seek payment for clean-up services. However, ACL includes no factual or legal support for these arguments, and thus they are not sufficiently briefed to warrant consideration. *See Bowman v. Slidell City*, No. 13-2636, 2014 WL 3542118, at *4 n. 20 (E.D. La. July 17, 2014).

Worley, and thus it maintains that all claimants were required to present claims in the manner. While ACL makes a colorable argument, we ultimately find it unpersuasive.

The law supports a finding that presentment to the responsible party is sufficient even when the responsible party designates a third party administrator. First, the OPA states that all claims "*shall be presented first to the responsible party*," thus indicating that all that is required is presentment to the responsible party. 33 U.S.C. § 2713(a). Second, while the OPA does require an advertisement outlining procedures for submitting claims, the language used in outlining compliance with such procedures is permissive: "such party or guarantor shall advertise the designation and the procedures by which claims *may be presented*." 33 U.S.C. § 2714(b)(1). Therefore, even though a third party administrator was identified for receiving claims, compliance with such statutory procedures was expressly permissive rather than required.

Accordingly, presentment to the responsible party is sufficient under clear statutory language. Section 2713(a) mandates presentment to the responsible party; section 2714(b)(1) mandates advertising the claims process and how claims "may be presented;" neither section excludes presentment directly to the responsible party, nor does the latter section override the mandate of the former. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)

("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'"); *White v. Black*, 190 F.3d 366, 368 (5th Cir. 1999) ("The canons of statutory construction dictate that when construing a statute, the courts should give words their ordinary meaning and should not render meaningless the language of the statute."). Nevertheless, even in the event that ACL is correct and a claim must be presented exactly as requested in the advertisement (and that presentment to the responsible party is insufficient when a third party administrator has been appointed), ACL's argument still fails because it presents absolutely no evidence to support its conclusory assertion that Worley never received invoice N0901-239.

## 2. ES&H's Revised Invoices

ACL also challenges the Fund's payment of invoices submitted by ES&H charging for services at the original rates set forth in its published rate schedule without the agreed rate reductions. Rec. Doc. 146-1 at 11. ACL maintains that ES&H revised the rates in its invoices after presentment and before submitting them to the Fund, meaning the invoices submitted to the Fund were never properly presented and thus the Fund should not have paid ES&H the $124,519.74 requested therein. *Id*. The Government responds that ACL's argument is so bereft of specificity that it cannot

14

adequately respond. Rec. Doc. 151 at 8. In particular, the United States contends that the argument is insufficient because ACL does not identify any specific invoices, claims, or payments that it challenges. *Id*. Further, ACL provides no factual support for any of its contentions in the two-sentence argument. *Id*. In reply, ACL argues that Exhibit B to the Lane Declaration shows how much was actually paid and supports its argument. Rec. Doc. 154 at 2. Further, ACL maintains that the summary spreadsheet is admissible under Federal Rule of Evidence 1006. *Id*. at 3.

The spreadsheet cited by ACL lacks sufficient evidence to support summary judgment. While ACL is correct that it does have a "Rate Reduction Agreement" line item reflecting a total of $124,519.74 deriving from nine separate invoices, the line item and spreadsheet do not indicate that particular invoices were never presented to ACL and/or Worley or that the amounts sought were altered at any time. Rec. Doc. 146-3 at 29. In fact, the header to the chart containing that line items reads "Amounts reimbursed by the NPFC accepting the original documentation that was reviewed and denied by ACL." This header tends to indicate that all of those invoices were presented to ACL and subsequently denied, thus contradicting ACL's position. *Id*. Accordingly, genuine issues of fact remain concerning presentment of the subject ES&H invoices.

**b. Proof of Causation**

ACL argues that the United States should be denied recovery for any payment made by the Fund to a claimant that failed to establish that the loss was caused by the oil spill. Rec. Doc. 146-1 at 14. More specifically, ACL maintains that the Government should not be able to recover for payments made for losses incurred solely as a result of the Coast Guard's closing of the Mississippi River. *Id.* at 15. ACL contends that any all such claims should have been denied by the Fund unless a claimant showed that its vessel, or the berth where it was scheduled to dock, were oiled as a result of the spill. *Id.* The United States counters that a claimant may recover lost profits which were due to the injury, destruction, or loss of the natural resource of the Mississippi river that resulted from the oil discharge. Rec. Doc. 151 at 16.

Under the OPA, each responsible party is liable for damages, including "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant." 33 U.S.C. § 2702(b)(2)(e). Accordingly, courts in this circuit have refused to make oiling of physical property a prerequisite for recovery of damages under the OPA; instead, they have found triable issues of fact as to causation when claimants seek damages for loss of business resulting from the closure or loss of use of a natural resource

16

such as a river. *See In re Settoon Towing LLC*, No. 07-1263, 2009 WL 4730969, at *4 (E.D. La. Dec. 4, 2009) (finding a disputed issue of fact as to whether closure of waterway after oil spill caused the alleged economic losses); Dunham-*Price Group, LLC v. Citgo Petroleum Corp.*, No. 07-1019, 2010 WL 1285446, at *1-2 (W.D. La. Mar. 31, 2010) (finding a triable issue of fact as to causation of plaintiff's claim for business interruption losses allegedly resulting from the Coast Guard's closing of the Calcasieu River following an oil spill). ACL's arguments to the contrary lack merit.

ACL relies primarily on two cases to support its position that claimants should not be able to recover damages that resulted from the closure of the river rather than physical oiling of property: *In re Taira Lynn Marine Ltd. No. 5, L.L.C.*, 444 F.3d 371, 383 (5th Cir. 2006) (hereinafter "*Taira Lynn*"), and *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2016 WL 915257 (E.D. La. Mar. 10, 2016) (hereinafter "*Deepwater Horizon*"). Neither case adequately supports ACL's position. First, in *Taira Lynn*, the Fifth Circuit found that none of the claimants raised an issue of fact as to whether the release of a gaseous mixture into the air caused the property damage alleged. 444 F.3d at 383. However, *Taira Lynn* is an inapt analogy to the case at hand because there, while the police evacuated the area and, in doing so, allegedly harmed

17

certain businesses in the vicinity, there was no alleged loss of profits resulting from damage to a *natural resource* as exists here. *Id. See also Deepwater Horizon*, 2016 WL 915257 at *7 (noting that the gaseous release in *Taira Lynn* caused no direct damage to property or resources). Furthermore, *Deepwater Horizon* does not stand for the proposition ACL suggests. There, the court noted that the facts were distinguishable from river shutdown cases such as *Dunham-Price* where the shutdown was a result of the oil spill, because the moratorium on drilling addressed the risk of future blowouts and oil spills instead of the spill caused by the explosion at the Deepwater Horizon rig. *Deepwater Horizon*, 2016 WL 915257 at *6-7 ("Significantly, and unlike the Moratorium, the river closure [in *Dunham-Price*] was part of the effort to contain and clean up the spill from the defendant's facility."). Therefore, *Deepwater Horizon* aligns with and does not reject the holding of cases such as *Dunham-Price*.

We find this case most similar to *Dunham-Price* where the Coast Guard closed the Calcasieu River in response to an oil spill, and the court found that genuine issues of fact precluded summary judgment as to whether the oil spill caused an upriver concrete facility's business interruption losses arising out of the river closure. *See Dunham-Price*, 2010 WL 1285446. Accordingly, we reject ACL's conclusion that any damages resulting primarily from the closure of the Mississippi River are improper under the OPA,

because the closure of the river was a response to and a direct result of the oil spill.

### c. The OMI Forum Selection Clause

Finally, ACL claims that the Court should deny the Government recovery on all payments made to OMI because of a forum selection clause contained within the Master Service Agreement ("MSA") entered into between ACL and OMI. Rec. Doc. 146-1 at 15. The relevant portion of that clause states:

> In the event of a dispute over the meaning, interpretation, or application of this Agreement, it shall be construed fairly and reasonably and neither more strongly for nor against either Party. The Parties agree and stipulate that the exclusive venue for any dispute arising out of or in connection with this Agreement shall be the United States District Court for the Eastern District of Louisiana located in New Orleans, Louisiana.

Rec. Doc. 146-3 at 9. ACL claims that OMI violated this clause by filing its claims with the Fund instead of directly filing suit in this court, and thus the United States should not be reimbursed for its payments to OMI. Rec. Doc. 146-1 at 15-16. The United States' primary argument in response is that the term venue as used in the contract refers to the "locality of suit, that is, with the question of which court, or courts . . . may hear the specific suit in question." Rec. Doc. 151 at 22 (citing BLACK'S LAW DICTIONARY 1557 (6th ed. 1990)). Because the Fund is a federal agency and not a court, the government maintains that the provision was

not violated when OMI filed its claim with the Fund. *Id*. at 23. Again, ACL's position lacks merit.

First, OMI's submission of its claims to the Fund did not resolve, or even purport to address the merits of, the dispute between ACL and OMI. Rather, the Fund made its own evaluation of OMI's claims and, for all intents and purposes, purchased those claims from OMI. In fact, the OPA explicitly states that "[a]ny person, including the Fund, who pays compensation pursuant to this Act to any claimant for removal costs or damages shall be subrogated to all rights, claims, and causes of action that the claimant has under any other law." 33 U.S.C. § 2715. "In essence, subrogation is an assignment." *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 397 (5th Cir. 2002). It is "the substitution of one person in the place of another with reference to a lawful claim." *Id*. (citing BLACK'S LAW DICTIONARY 1427 (6th ed. 1990)) (internal alterations omitted). OMI's assignment of its rights to the Fund cannot be construed as a violation of the forum selection clause because OMI did not file suit or seek to have its claims adjudicated, let alone adjudicated in another forum. Finally, when the United States did file suit, it did so in the Eastern District if Louisiana. The dispute is being adjudicated in that forum as required by the MSA. ACL's argument for summary judgment is therefore denied.

**IV.** **<u>CONCLUSION</u>**

For the reasons outlined above,

**IT IS ORDERED** that ACL's motion for partial summary judgment

is **DENIED.**

New Orleans, Louisiana, this 16th day of September, 2016.


_____

SENIOR UNITED STATES DISTRICT JUDGE